UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 2:25-CR-34 |
| v. | ) |
| | ) JUDGE CORKER |
| PAIGE LINDSEY RUSSELL | ) |

**PLEA AGREEMENT**

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, PAIGE LINDSEY RUSSELL, and the defendant's attorney, Joseph W. McMurray, have agreed upon the following:

1. The defendant will plead guilty to the following count(s) in the indictment:

    a) Count One. Conspiracy to distribute fifty (50) or more grams of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A).

    The punishment for this offense is as follows: A minimum mandatory 10 years up to life imprisonment, a maximum fine of $10,000,000.00, a minimum of 5 years up to life on supervised release, and a $100 mandatory assessment fee.

2. In consideration of the defendant's guilty plea(s), the United States agrees to move the Court at the time of sentencing to dismiss the remaining count(s) against the defendant in this indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged. Specifically, the elements of the offense(s) are as follows: 1) Two or more persons conspired, or agreed, to distribute methamphetamine; 2) The defendant knowingly and voluntarily joined the conspiracy; 3) The

defendant participated in the conspiracy; and 4) The conspiracy involved at least 50 grams of actual methamphetamine.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

a) In early 2024, agents with the Drug Enforcement Administration, the Tennessee Bureau of Investigation (TBI), the 3rd Judicial Drug Task Force (3rd DTF), Greene County Sheriffs Office and other law enforcement entities were investigating a conspiracy to distribute large amounts of methamphetamine in the Greene County and Washington County area within the Eastern District of Tennessee. This organization obtained large quantities of methamphetamine, a schedule II controlled substance, from large criminal organizations and other methamphetamine suppliers located inside and outside the State of Tennessee. During the course of this investigation, the defendants came to the attention of law enforcement as distributors of methamphetamine.

b) Agents had been investigating Reban Early (2:23-CR-134) and his involvement in a methamphetamine conspiracy and during that investigation, Early began travelling to the residence of Gudger and the defendant located at 91 Vicki Street in Greeneville, Tennessee. Early's trips to Gudger and the defendant coincided with the arrest of Early's source of supply of methamphetamine. During the investigation, a controlled by was conducted where the CI purchased two ounces of methamphetamine from Early. During the transaction, Early told the CI that the methamphetamine came from Gudger and the defendant and that the bags of methamphetamine were "short" (i.e. underweight) because Gudger had weighed them out.

Agents were able to develop a CI who could purchase methamphetamine directly from the defendant.

c) On April 18, 2024, the CI arranged to buy two ounces of methamphetamine from the defendant. The CI travelled to the defendant's and Gudger's residence and observed Gudger leaving in a vehicle upon the CI's arrival. The CI went into the residence where the defendant and her two-year-old child were present. The CI gave the defendant $600 in exchange for two baggies of methamphetamine. The total weight of the methamphetamine was 57.4 grams. The transaction was audio and video recorded.

d) On April 23, 2024, the CI again arranged to buy two ounces of methamphetamine from the defendant at her residence. Upon arrival, the CI entered the residence where both the defendant and Gudger were present. The defendant took the $600 from the CI and the spoke to Gudger before going into the bathroom. The defendant returned with two baggies and methamphetamine with a total weight of 55.45 grams and gave them to the CI. The transaction was audio and video recorded.

e) On June 5, 2024, another controlled purchase was arranged with the CI for the purchase of two ounces of methamphetamine from the defendant. Upon arrival at the defendant's and Gudger's residence the CI went inside and observed the defendant on the couch. The defendant told the CI to put the $600 on the couch and pick up two baggies of methamphetamine already on the couch. The total weight was 57.1 grams. The transaction was audio and video recorded. It should be noted that during this controlled buy, Reban Early arrived at the residence while the CI was inside.

f) On June 16, 2024, the CI arranged a purchase of one ounce of methamphetamine from Gudger at the residence. Upon arrival, the CI went inside and spoke with Gudger and the

3

defendant. Gudger and the defendant discussed who would be providing the methamphetamine to the CI and it was decided that Gudger would from Gudger's supply. Gudger gave the CI one ounce (total weight 29.04 grams) of methamphetamine with the understanding that the CI would repay Gudger at a later date. The transaction was audio and video recorded.

      g)     The next day, June 17, 2024, the CI was contacted by the defendant and was told that he needed to pay Gudger back for the fronted methamphetamine from the day before. The CI went to the defendant's and Gudger's residence for this purpose. Upon arrival, the CI noticed that Reban Early was also present at the residence and left a short time after. After leaving the residence, Early was traffic stopped by agents and found to be in possession of two ounces of methamphetamine. According to the CI, the defendant and Gudger became aware that Early was stopped and became concerned that agents would be coming to their residence next. While the CI was in the residence and on the phone with an agent, the defendant began to quickly gather together the methamphetamine that was in the house. The CI told the agent that the defendant then ran into the woods across the street from her home with the methamphetamine.

      h)     At this same time, law enforcement received a complaint from an anonymous, concerned citizen that people were running across Vicki Street into the woods and they were carrying items with them. Agents then responded to Vicki Street where the defendant approached officers and told them she had not seen anything. The wooded area was then searched and agents found a bag with approximately 29 grams of methamphetamine. Close by, agents found a small wooden dresser drawer containing various household items and drug paraphernalia including scales. 820 grams of methamphetamine was also found in the drawer.

      i)     The defendant now admits that she conspired with co-defendant Gudger others to distribute fifty grams or more of actual methamphetamine.

4

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a) the right to plead not guilty;

    b) the right to a speedy and public trial by jury;

    c) the right to assistance of counsel at trial;

    d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    e) the right to confront and cross-examine witnesses against the defendant;

    f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

    g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

    a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

    b) The Court will impose special assessment fees as required by law; and

    c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the

Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

    d)    Pursuant to Rule 11(c)(1)(C), the defendant and the United States agree that a particular provision of the Sentencing Guidelines, policy statement, or sentencing factor, namely,

        i)    for purposes of this plea agreement, the parties agree that the defendant should be held individually responsible for between 500 grams and 1.5 kilograms of actual methamphetamine.

        ii)    for the purposes of this plea agreement, the parties agree that a 2-level enhancement for maintaining a dwelling under §2D1.1(b)(12) should NOT apply to this defendant.

In the event the Court declines to accept this agreement, either party will be free to withdraw from the plea agreement.

    7.    Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any

6

additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Financial Obligations. The defendant agrees to pay all fines and/or restitution to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs.

The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

      b)      The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      c)      If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10.      The defendant voluntarily, knowingly, and intentionally agrees to the following:

      a)      The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

      b)      The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

      c)      The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be

8

sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

11. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. (Indeed, because the defendant is pleading guilty to conspiracy to distribute 50 grams or more of actual methamphetamine, removal is presumptively mandatory.) Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of the defendant's conviction on immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences the plea may entail, even if the consequence is automatic removal from the United States.

12. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The

defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

13. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

14. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

FRANCIS M. HAMILTON, III

10

Case 2:25-cr-00034-DCLC-CRW   Document 43   Filed 01/06/26   Page 10 of 11
PageID #: 97

|                | UNITED STATES ATTORNEY |
|---|---|
| __1/6/26___<br>Date | By: _____<br>ANDREW C. PARKER<br>Assistant United States Attorney |
| __1-5-26___<br>Date | _____<br>PAIGE LINDSEY RUSSELL<br>Defendant |
| __1/5/26___<br>Date | _____<br>JOSEPH W. McMURRAY<br>Attorney for the Defendant |